## Steve Novak, Appellee, v. Grand Trunk Western Railway Company, Appellant.

### Gen. No. 17,128.

MASTER AND SERVANT—*when instruction erroneous as assuming controverted points.* In an action for personal injuries, where the evidence is sharply conflicting whether an alleged "straw boss" of defendant was present and directing the work at the time of the accident, it is prejudicial error to instruct that where an act is performed by a servant in obedience to a command of one having authority to give it, and the act is attended with danger, the servant need not balance the danger and decide with certainty whether he must do the act; and his knowledge of attendant danger will not defeat his right of recovery if, in obeying, he acts as an ordinarily prudent man would under the circumstances, provided these facts are warranted by the evidence.

Appeal from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded. Opinion filed May 8, 1913.

KRETZINGER, ROONEY and KRETZINGER, for appellant.

JOHNSON & BELASCO, for appellee; JOEL BAKER, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the court.

This is an appeal from a judgment obtained by Steve Novak, hereinafter called plaintiff, against the Grand Trunk Western Railway Company, hereinafter called defendant, in a suit to recover damages for personal injuries received by him while employed as a laborer in the repair shops of the defendant.

It was claimed by the plaintiff that one Frank Mudra was a "straw boss," acting for the defendant, to whom the plaintiff owed the duty of obedience, and that while obeying orders of Mudra the accident in question happened. There was much testimony touch-

ing the position of Mudra, and it is earnestly argued by the defendant that he was not a "straw boss" but only a fellow-servant with plaintiff.

The plaintiff testified, in substance, that Mudra was bossing a job of repairing a car in the repair shop of defendant; that he gave detailed instructions to the workmen as the work progressed; that the crew working on this car was composed of the plaintiff, his brother Pete Novak, Steve Fabian, and the "straw boss," Frank Mudra; that Mudra ordered Pete to go under the car, and then ordered Fabian and the plaintiff to raise it up from the trucks with a crowbar; that this was done and that Mudra then ordered Fabian to let go of the bar and to drive in a "bolster;" that plaintiff protested that he could not hold up the car alone as it was too heavy, but Mudra, insisting that plaintiff could hold it, ordered Fabian to let go; that as soon as Fabian let go the bar the weight of the car was too great for plaintiff to hold alone, and the car suddenly pushing down the end of the crowbar under it caused the other end, which plaintiff was attempting to hold, to fly up, and it struck him in the eye, inflicting the injuries complained of.

This story of the occurrence is corroborated by the plaintiff's brother, Pete. These were the only witnesses testifying to the occurrence on behalf of the plaintiff.

Opposed to this was the testimony of four witnesses, to the effect that Mudra was not present at the scene of this occurrence, and at the time was not in the yard at all. Mudra himself testified that he was not in the yard at the time but was about one-half mile away. The testimony of Steve Fabian supports the claim of defendant that Mudra had nothing to do with the accident. Fabian says that Mudra was not working on the car in question, and gave no orders concerning the same, as testified to by plaintiff. Fabian, who both parties say was one of the crew working with plaintiff at the time of the accident, flatly contradicts the

story of the plaintiff and his brother with reference to Mudra's connection with it. Other witnesses testified as to Mudra being outside of the yard at the time.

It was therefore necessary that the instructions should not tend to mislead the jury, especially upon the vital questions of fact involved. Under these conditions the following instruction was given:

"The court instructs you on the law in this case, that where an act is performed by a servant, in obedience to a command by one having authority to give it, and the performance of the act is attended with a degree of danger, yet, in such case, it is not requisite that such servant shall balance the degree of danger, if any, and decide with absolute certainty whether he must do the act or refrain from doing it; and his knowledge of attendant danger will not defeat his right of recovery, if in obeying the command he acted with the degree of prudence that an ordinarily prudent man would have done under the circumstances, provided these facts are warranted by the evidence."

It is manifest that this instruction proceeded upon the assumption that plaintiff had performed the act in question in obedience to a command from Mudra, and also that Mudra had authority to give such commands, both of which points were the principal controverted issues in the case. The instruction does not require the jury to believe anything from the evidence as to these controverted points. It assumed the plaintiff's theory to be true and the defendant's to be untrue. It would almost necessarily work injuriously to the defendant. The words "provided these facts are warranted by the evidence" are not equivalent to requiring the jury to believe facts from the evidence, and do not cure the harm in the instructions.

For the error indicated the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*